**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>JOY WILSON,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>Case No.: PWG-17-2784</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MONTGOMERY COUNTY</td><td></td><td></td></tr>
<tr><td>BOARD OF TRUSTEES, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

Montgomery Community College (the "College") hired Plaintiff Joy Wilson as a Program Coordinator in July 1998 and terminated her employment on May 19, 2016. Third Am. Compl. ¶¶ 3, 13, 29, 35, ECF No. 51-1.[1]  Believing that her termination, as well as her supervisors' treatment of her leading up to her termination, was discriminatory and retaliatory, Wilson filed a charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") and then this lawsuit against the College and Montgomery College Foundation, Inc. (the "Foundation"). Compl., ECF No. 2.  She alleged discrimination and retaliation in violation of Montgomery County Code §§ 27-6 and 27-19 ("County Code").  *Id.* Over the course of three amendments, ECF Nos. 24, 30, 51-1, in response to as many motions to dismiss, ECF Nos. 10, 29, 48,[2] Wilson eliminated the College and added Montgomery College Board of Trustees (the "Board") as a Defendant and added claims for disability discrimination in violation of the

---

[1] At this stage of the proceedings, I accept the facts as alleged in Wilson's Third Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] Defendants' motions were denied as moot or without prejudice.  ECF Nos. 26, 46, 53.

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213; the Equal Protection Clause of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; and the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, and a claim for retaliation in violation of the ADA.

Wilson's Second Amended Complaint introduced federal claims and, on that basis, the Board, the College, and the Foundation removed the case to this Court. ECF No. 1. After they asserted that Wilson failed to comply with the notice requirements of the Local Government Tort Claims Act, Defs.' Second Mot. to Dismiss, ECF No. 48, Wilson filed her Third Amended Complaint, ECF No. 51-1, as well as a "Motion for Good Cause [to Waive Required Notice] Pursuant to the Local Government Tort Claims Act of Maryland ['LGTCA']." ECF No. 54. The Board filed a Motion to Dismiss Third Amended Complaint, ECF No. 55, as well as an Opposition to Wilson's Motion for Good Cause, ECF No. 56, and a Memorandum in support of both filings, ECF No. 55-2. Wilson filed a Reply with regard to her Motion for Good Cause, ECF No. 58, and the parties fully briefed the Motion to Dismiss. ECF Nos. 57, 59, 59-1. A hearing is not necessary to resolve these pending motions. *See* Loc. R. 105.6. Because, even after three amendments, Wilson still fails to state a claim for discrimination, her discrimination claims will be dismissed with prejudice. While she has stated a claim for retaliation, she has not shown good cause for failing to comply with the LGTCA notice requirement. Accordingly, her Motion for Good Cause is denied and her County Code retaliation claim will be dismissed with prejudice, but her ADA retaliation claim—and only that claim—will proceed. Further, because the Board is the only proper Defendant, the claims against the College and the Foundation will be dismissed, and this case will proceed against the Board only.

**Proper Defendant**

Wilson originally sued the College and the Foundation, then eliminated the College and added the Board. In her request to file the Third Amended Complaint, Wilson stated that "the amended complaint will remove Montgomery Community College and the 501(c)(3) Montgomery College Foundation, Inc., to avoid complex federalism and other issues." ECF No. 50. And, in her Motion to Amend, Wilson stated that the Third Amended Complaint would "concede that Montgomery College is not a substantive defendant for purposes of suit apart from the Board of Directors." ECF No. 51. Her Third Amended Complaint states:

> Defendant, Board of Trustees of Montgomery College, is the legal governing body of Montgomery College, Plaintiff's employer at all relevant times. Defendant, Montgomery College Foundation, Inc., is a 501(c)(3) nonprofit organization with principal offices in Rockville, Montgomery County, Maryland. Defendant is an employer and, at all relevant times, employed Plaintiff.

Third Am. Compl. ¶ 3. But, she refers to "Defendant" in the singular throughout her pleading and does not bring any allegations against the Foundation.

The Board argues that the College and the Foundation "are no longer named in the Third Amended Complaint and should be dismissed." Board Mem. 1 n.1. In her Opposition, Wilson does not dispute that argument, and, as in her Third Amended Complaint, she refers to "Defendant" in the singular throughout her brief. Accordingly, Wilson has abandoned her claims against the Foundation and the College. *See Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *3 n.3 (D. Md. Feb. 4, 2016); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 669 n.9 (D. Md. 2013); *Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010). Further, the College is not subject to suit. *See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (noting that "the board of trustees is identical with the college itself for purposes of [employment

discrimination] suits," and that "'[e]ach board of trustees may sue and be sued,'" whereas "[n]o such provision is included in the statutes to empower the college itself to sue or be sued," and concluding that a suit is "properly filed . . . against the board of trustees," but if suit is brought against the college instead, amendment would be appropriate" (quoting Md. Code Ann., Educ. § 16-203(k))). Wilson's serial amendments have muddied up the water regarding the identity of the persons or entity that are subject to suit. Clarity is required. The only proper party is the Board. All others previously named by Wilson are dismissed.

While the Board is the only possible Defendant, it obviously acts through its agents and, where Wilson attributes acts to an individual, I will describe that individual by name. In other instances, she is entirely silent regarding the actor's identity, referring only to "Defendant." To avoid confusion, I will note where the actor's identity is unknown.

## **Background**

Wilson claims that she has a disability that "includes emotional and other impairments including, but not limited to, severe emotional stress reactions, and Plaintiff has been diagnosed with Persistent Depressive Disorder, Left Amblyopia, and Dry Eyes Syndrome." Third Am. Compl. ¶ 14. She alleges that her "impairments substantially affect the life activity of seeing, communicating, interacting, and working." *Id.* She claims that in May 2014, she "asked that Defendant change her desk location as an accommodation due to her psychological impairment," and "Defendant," despite its awareness of her disability, denied her request on October 27, 2014; she does not identify the individual or individuals to whom she made her request or who denied the request. *Id*. ¶¶ 15–16.

Wilson also claims that in November 2014, after her "immediate supervisor, Tracee Matthias, demanded receipts for purchases from a vendor," and she told her supervisor that "the

receipts were on Plaintiff's desk," Matthias criticized the way Wilson spoke to her, "stated that Plaintiff acted like a character on the 'Housewives of Atlanta," and "threatened to write Plaintiff up." *Id.* ¶¶ 17, 19. Then, "Matthias added that she did not want to walk in the Plaintiff's shoes, does not have time to babysit, and does not care how Plaintiff felt," which caused Wilson to have "a strong emotional reaction related to her impairment." *Id.* ¶ 19. Wilson "prepared a Non Bargaining Staff Grievance Form regarding the November 12, 2014, incident." *Id.* ¶ 20.

In conclusory language, Plaintiff alleges that she "was isolated, ignored, harassed, and bullied at various times by Defendant," again without naming any individual actors, "after her initial request for accommodations" and "was subject to a pervasively hostile work environment and long term harassment based on her disability, including comments by Matthias and Dorothy Umans [Wilson's manager] dismissing her concerns and reproaching her for her emotional reactions." *Id.* ¶¶ 21, 23. She "filed an EEO Complaint with the Defendant's Human Resources Department on February 13, 2015." *Id.* ¶ 8. Wilson also claims that she "received a harshly critical performance review for Fiscal Year 2015 after June 30, 2015, from Defendant [through an unidentified actor], prepared by Dorothy Umans, Plaintiff's Manager." *Id.* ¶ 23.

According to Wilson, she requested an accommodation again in January 2016 and "was again denied her accommodation request on or about January 19, 2016." She then "suffered constant threats, excessive supervision, and false accusations about work performance." *Id.* ¶¶ 25–26, 45. She claims that "Defendant," again without identifying a specific actor, "engaged in long term harassment for the duration of employment, and created and maintained a hostile work environment." *Id.* ¶ 26. She alleges that she was placed on administrative leave on February 17, 2016, which she views as "either a constructive discharge or adverse employment action or both." *Id.* ¶ 27. Wilson filed a complaint with the MCCR on May 13, 2016, "alleging

failure to provide a reasonable accommodation, long term harassment, hostile work environment, and unlawful discharge." *Id.* ¶ 28. The Board terminated her employment on May 19, 2016, while she was still on administrative leave. *Id.* ¶ 29.

## Failure to State a Claim

### *Standard of Review*

Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In the context of employment discrimination, a plaintiff "need not allege specific facts establishing a prima facie case of discrimination." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 764–65 (4th Cir. 2003) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510–11 (2002)). Nonetheless, "*Swierkiewicz* [does not] remov[e] the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Id.* (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002)). Thus, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Wilson brings six claims, four for disability discrimination and two for retaliation. The disability discrimination claims include a claim for discrimination in violation of the

Montgomery County Code (Count I), a § 1983 claim for discrimination (Count III), a claim for discrimination in violation of the ADA (Count IV), and a claim for discrimination in violation of the Rehabilitation Act (Count VI). The retaliation claims include a claim for retaliation in violation of the County Code (Count II) and a claim for retaliation in violation of the ADA (Count V). I will address Wilson's § 1983 claim first, followed by her claims of disability discrimination in violation of the County Code, ADA, and Rehabilitation Act. I then will consider her ADA retaliation claim, followed by her County Code retaliation claim.

*Section 1983 Claim for Discrimination (Count III)*

Wilson's allegations of discrimination under § 1983 and Rehabilitation Act claims are the same. *Compare* Third Am. Compl ¶¶ 56–65 (§ 1983 discrimination claim), *with id.* ¶¶ 67–76 (ADA discrimination claim). Thus, because "the Rehabilitation Act's 'comprehensive remedial schemes . . . bar identical claims made pursuant to section 1983 involving the same predicate incidents of discrimination,'" her § 1983 claim must be dismissed. *See Gatling v. Carter*, No. PX 15-3723, 2017 WL 480756, at *6 (D. Md. Feb. 6, 2017) (quoting *Peter B. v. Sanford*, No. 10-767-RBH, 2010 WL 5684397, at *5 (D.S.C. Dec. 6, 2010), *report and recommendation adopted*, No. 10-CV-767, 2011 WL 347019 (D.S.C. Feb. 1, 2011) ("Various circuit courts of appeals have agreed that the comprehensive remedial schemes of the ADA and the Rehabilitation Act bar identical claims made pursuant to Sections 1983 involving the same predicate incidents of discrimination.")).

*Disability Discrimination in Violation of the County Code, ADA,*
*and Rehabilitation Act (Counts I, IV, VI)*

I will address the ADA, Rehabilitation Act, and County Code discrimination claims together, as the same analysis applies to all three. *See Works v. Colvin*, 519 F. App'x 176, 184

(4th Cir. 2013) ("The analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the [ADA]."); *Sillah v. Burwell*, 244 F. Supp. 3d 499, 507 (D. Md. 2017) ("[B]ecause Maryland has applied the Montgomery County Human Rights Act and Maryland Human Relations Act by looking to ADA case law, it is appropriate to consider [the County Code and ADA] claims of disability discrimination together." (citing *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 193 n.3 (4th Cir. 2013), *as amended* (May 3, 2013) (citing *Ridgely v. Montgomery Cty.*, 883 A.2d 182, 193 (Md. Ct. Spec. App. 2005)))).

Wilson alleges three forms of disability discrimination: failure to accommodate, hostile work environment, and termination of employment, following placement on administrative leave.

### 1. Failure to accommodate

The elements of an ADA failure to accommodate claim are:

> (1) that [the plaintiff] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [the plaintiff's] disability; (3) that with reasonable accommodation [the plaintiff] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."

*Works v. Colvin*, 519 F. App'x 176, 184 (4th Cir. 2013) (alterations in original) (quoting *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Assuming *arguendo* that Wilson sufficiently alleges that she had a disability of which her employer was aware yet refused to accommodate, she has not pleaded facts from which the Court can infer the third element of the claim. She fails to allege how changing her desk location would be a reasonable accommodation for her claimed disability of "psychological impairment." Third Am. Compl. ¶ 15. She pleaded that she has "severe emotional stress reactions" and "Persistent Depressive

Disorder," *id.* ¶ 14, but it is not possible to infer how these claimed disabilities prevented her from performing the essential functions of her job at her assigned desk location, or how the accommodation would enable her to perform those functions any better than at her assigned desk. Consequently, she has failed to state a claim for failure to accommodate under the ADA, the Rehabilitation Act, or the County Code. *See Works*, 519 F. App'x at 184; *see also Sillah*, 244 F. Supp. 3d at 507.

### 2. Hostile Work Environment

To state a claim for hostile work environment under the ADA, a plaintiff must allege that

> (1) [she] is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001); *see Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 483 (D. Md. 2015) (quoting *Fox*). Wilson alleges that she "was isolated, ignored, harassed, and bullied at various times by Defendant after her initial request for accommodations" and "was subject to a pervasively hostile work environment and long term harassment based on her disability, including comments by Matthias and Dorothy Umans dismissing her concerns and reproaching her for her emotional reactions." Third Am. Compl. ¶ 21. Beyond these conclusory allegations, however, she does not allege any unwelcome harassment.

Additionally, to plead that the environment is "sufficiently severe or pervasive," Wilson must allege "not only that [s]he subjectively perceived h[er] workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Fox,* 247 F.3d at 178. To determine whether an environment is objectively hostile, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir.1999) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993))). For example, in *Strothers v. City of Laurel, Maryland*, 895 F.3d 317 (4th Cir. 2018), the Fourth Circuit concluded that the employer "significantly altered terms and conditions of Strothers' employment" by "chang[ing] Strothers' daily arrival time," when that time "was expressly bargained for by the employee and had a significant effect on the employee's decision to accept the job"; and also "chang[ing] the dress code as applied to Strothers, . . . publicly humiliat[ing] her" and "institut[ing] a policy that forbid Strothers from leaving her desk, including to use the restroom, without specific approval." *Id.* at 331–32. The court reasoned that "a reasonable jury could find that the alleged harassment was a daily occurrence that pervaded numerous aspects of Strothers' employment." *Id.* at 332.

Here, in contrast, Wilson simply has identified a few isolated incidents in which she was reprimanded and given a poor performance evaluation. She has not alleged any acts by her employer that impacted her daily working conditions, beyond alleging in merely conclusory terms that she was "ignored, harassed, and bullied." Nor is it possible to infer the frequency or severity of the alleged harassment, or whether, viewed objectively, it was sufficiently hostile on the scant facts provided, which simply allege "long term" harassment "at various times." Further, she has not alleged that the harassment was physically threatening or humiliating, or that it interfered with her ability to perform her job. Consequently, Wilson's allegations are insufficient to state a claim for harassment or hostile work environment under the ADA. *See id.*; *Wilson*, 121 F. Supp. 3d at 483–84; *Iqbal,* 556 U.S. at 678–79.

*3. Wrongful discharge*

The elements of a wrongful discharge claim under the ADA are "(1) [the plaintiff] was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC,* 375 F.3d 266, 273 n.9 (4th Cir. 2004) (quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)); *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 487 (D. Md. 2013) (quoting *Rohan*); *see also Niner v. Garrett Cty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018) ("To establish a prima facie case of wrongful demotion or discharge under the ADA, a plaintiff must show that (1) he is within the ADA's protected class; (2) he was subject to an adverse employment action; (3) at the time of the adverse employment action, he was performing the job at a level that met the legitimate expectations of his employer; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.").

The Board contends that, "although Plaintiff claims in a conclusory manner that she was a qualified individual able to perform the essential functions of her job, she does not state that at the time of discharge, she was performing at her employer's expectation level," and, "[i]n fact, Plaintiff alleges that she received a harshly critical review, but does not state that it was inaccurate." Board Mem. 15. It also insists that, "aside from bare conclusory allegations, … Plaintiff has alleged no facts to support that her placement on administrative leave and termination were due to her disability." *Id*. at 16.

Wilson alleges that she was "a qualified individual able to perform the essential functions of a Program Coordinator." Third Am. Compl. ¶¶ 35, 59, 70, 94. Although she is not required to

plead precise details about those functions, she must do more than parrot the elements of a wrongful discharge claim. She must provide some basis for the Court to determine whether she was meeting her employer's performance expectations for her particular job at the time she was discharged. With no information at all about what her position entailed or her work performance, it is not possible to determine whether she has stated a plausible claim for wrongful discharge. Because Wilson does not provide "even a cursory description of what kind of work [she performed or was expected to perform], she has simply recited the elements of the cause of action." *Rubino v. New Acton Mobile Indus., LLC,* 44 F. Supp. 3d 616, 623 (D. Md. 2014). Indeed, while she claims that she was "able" to perform the functions of her position (and argues that this is enough for an inference that she was performing her essential work functions, Pl.'s Opp'n 9), she has not even alleged that she *was performing* those functions and fulfilling her employer's expectations. To the contrary, her one allegation with regard to her actual performance is that she "received a harshly critical performance review for Fiscal Year 2015 after June 30, 2015, from Defendant, prepared by Dorothy Umans, Plaintiff's Manager." Third Am. Compl. 23. Even if her use of the word "harshly" suggests that she disagrees with the extent of the negativity of the performance review, as Wilson argues, Pl.'s Opp'n 9, she still has not alleged that her work performance was sufficient to meet her employer's expectations. Thus, her threadbare allegations do not satisfy *Iqbal* and *Twombly*. *See Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 318 (D. Md. 2015) (dismissing ADA wrongful discharge claim where plaintiff did "not provide[] any meaningful information about the essential functions of her job"); *Rubino*, 44 F. Supp. 3d at 623–24 (dismissing case where plaintiff "makes no allegation whatsoever about his job performance or whether [his employer] considered him a satisfactory employee"); *see also Bock v. Florists' Transworld Delivery, Inc.*, No. WDQ-12-3702, 2013 WL

5276551, at *6 & n.23 (D. Md. Sept. 16, 2013) (concluding that plaintiff "pled facts supporting his allegation that he met FTD's legitimate expectations" where he "alleged that he 'continued to perform his duties in a satisfactory manner' despite the increase in his travel time" and "also alleged that he increased his sales to 121 percent of his sales quota and was ranked 5th in the sales department the day before he was terminated"; noting that in *Bailey v. AmeriGas Propane, Inc.,* No. WDQ-11-1701, 2012 WL 346632, at *4 (D. Md. Jan. 31, 2012), "plaintiff sufficiently pled he met employer's legitimate expectations by alleging he received positive performance evaluations," whereas in *Brandford v. Shannon–Baum Signs, Inc.,* No. RDB-11-836, 2012 WL 3542604, at *4 (D. Md. Aug. 1, 2012), the Court dismissed the wrongful discharge "claim when complaint contained only threadbare allegations unsupported by factual content that he met legitimate expectations," and in *Munoz v. Baltimore County, Md.,* No. RDB-11-2693, 2012 WL 3038602, at *8 (D. Md. July 25, 2012), "plaintiff did not sufficiently allege meeting legitimate expectations when he only addressed his performance of essential job functions and did not argue he met employer's expectations").

In sum, the Board's motion to dismiss is granted as to Wilson's disability discrimination claims based on failure to accommodate, hostile work environment, and wrongful discharge (Counts I, III, IV, and VI). *See* Fed. R. Civ. P. 12(b)(6).

### 4. *Dismissal with Prejudice*

A plaintiff's complaint ordinarily should be dismissed without prejudice unless she previously has been given an opportunity to amend her complaint or if doing so would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). As noted, Wilson, with the assistance of counsel, has filed three amended complaints in response to Defendants' previous motions to dismiss that identified specific deficiencies in her claims. The Foundation and the College contended that

Wilson failed to state a claim for discrimination based on failure to accommodate or termination as early as their first motion to dismiss.  Defs.' Mot. to Dismiss & Mem. 14–18, ECF No. 10. Additionally, they, along with the Board, argued in their Motion to Dismiss Second Amended Complaint that Wilson failed to state a claim for hostile work environment.  Defs.' Mem. in Support of Mot. to Dismiss Second Am. Compl. 15–17, ECF No. 48-1.  Despite Defendants' assertions that Wilson did not sufficiently plead the elements of her discrimination claims, Wilson has not made factual allegations sufficient to sustain a disability discrimination claim for failure to accommodate, hostile work environment, or wrongful discharge under the ADA, the Rehabilitation Act, or the County Code.  And, given the legal deficiency noted above with regard to her § 1983 claim, further amendment of that claim would be futile. *See Foman*, 371 U.S. at 182 (noting that reasons to deny leave to amend include, inter alia, "repeated failures to cure deficiencies by amendments previously allowed" and "futility of amendment"). Wilson contends that, after the College and the Foundation argued for dismissal of the failure to accommodate and wrongful termination claims under Rule 12(b)(6) in the first motion dismiss, that basis was not raised again until the Motion to Dismiss the Third Amended Complaint, and therefore those discrimination claims should not be dismissed with prejudice.  But, the fact remains that Wilson, who has had legal representation throughout this case, had ample warning as to the claims' inadequacies and amended three times without remedying them.  Accordingly, dismissal with prejudice of the discrimination claims in Counts I, III, IV, and VI is appropriate. *See id.*; *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013).

### *Retaliation in violation of the ADA (Count V)*

The elements of retaliation in violation of the ADA are "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and

the employment action." *Hamilton v. Prince George's Cty. Police Dep't*, No. DKC 17-2300, 2018 WL 1365847, at *6 (D. Md. Mar. 16, 2018) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). With regard to the first element, "protected activity is conduct 'oppos[ing] any practice made an unlawful employment practice[.]'" *Id.* (quoting 42 U.S.C. § 2000e-3(a)). This "expansive" definition "'encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). A request for an accommodation is a protected activity under the ADA. *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001). Also, a complaint to an employer qualifies as protected activity "when 'the employee "communicates to [his or] her employer a belief that the employer has engaged in . . . a form of employment discrimination"'" in violation of his or her federal rights. *Hamilton*, 2018 WL 1365847, at *6 (quoting *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009))).

Wilson claims that she made a request for accommodations in January 2016, and it was denied the same month. Third Am. Compl. ¶¶ 25–26, 45. She also claims that she filed an administrative complaint of discrimination on May 13, 2016. *Id.* ¶¶ 8, 28. These clearly were protected activities. *See Haulbrook*, 252 F.3d at 706; *Hamilton*, 2018 WL 1365847, at *6.[3]

---

[3] Wilson also claims that she "prepared a Non Bargaining Staff Grievance Form regarding the November 12, 2014, incident" in which her supervisor "criticized" her and "threatened to write Plaintiff up." *Id.* ¶¶ 17–20. But, she does not allege that, in filing the grievance, she communicated that she believed that she had been a victim of discrimination. *See id.* Consequently, she has not alleged engagement in protected activity based on filing a grievance following her November 2014 negative interaction with her supervisor. *See Hamilton*, 2018 WL 1365847, at *6.

Indeed, The Board does not challenge Wilson's pleading of the first element of her retaliation claims. *See* Board Mem. 16–17.

> As for the second element,

> "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " To illustrate, the Supreme Court has described "[a] supervisor's refusal to invite an employee to lunch" as a trivial, non-materially adverse action, but has said that "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement," is conduct that "might well" be materially adverse.

*Madock v. McHugh*, No. ELH-10-2706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011) (quoting *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 69 (2006) (citations and quotation marks omitted)); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) ("[R]etaliatory actions do have to be 'materially adverse'—such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." (quoting *Burlington N.*, 548 U.S. at 68, 126)). This standard "is less 'strenuous' than the standard in a discrimination claim," because "[t]he adverse employment action in a retaliation case need not affect an employee's 'terms or conditions of employment.' " *Id.* (quoting *Burlington N.*, 548 U.S. at 70). Indeed, "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment related retaliatory acts and harm." *Burlington N.,* 548 U.S. at 67.

Even with this lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee "AWOL"; or issuing a personal improvement plan, "an 'Attendance Warning,' " a verbal reprimand, "a formal letter of reprimand," or "a proposed termination." *Rock v. McHugh,* 819 F. Supp. 2d 456, 470–71 (D. Md. 2011). Yet, it is well established that constructive discharge is a form of adverse

employment action. *Boone v. Goldin,* 178 F.3d 253, 255–56 (4th Cir.1999), *abrogated on other grounds by Burlington N.,* 548 U.S. at 67; *Cohens v. Md. Dep't of Human Resources,* No. WDQ–11–3419, 2013 WL 3944451, at *5 (D. Md. July 30, 2013); *Banhi v. Papa John's USA, Inc.,* No. RWT-12-665, 2013 WL 3788573, at *6 (D. Md. July 18, 2013).

Wilson claims that her employer denied her requests for accommodation. Such a denial is likely to prompt—not dissuade—an employee to file an administrative claim, and therefore it would not qualify as an adverse employment action. *See Burlington N.,* 548 U.S. at 68; *Strothers*, 895 F.3d at 327; *Madock*, 2011 WL 3654460, at *26. She also claims that she was harassed "after" she sought accommodations. While the creation of a hostile work environment in response to a request for an accommodation could dissuade a reasonable employee from complaining about the denial of the request, I already concluded that Wilson fails to allege a hostile work environment. Moreover, this allegation is far too vague to infer any causality.

Finally, Wilson claims that, after requesting an accommodation in January 2016, she was placed on administrative leave on February 17, 2016, which she views as "either a constructive discharge or adverse employment action or both," and her employment was terminated on May 19, 2016, while she was still on administrative leave. Third Am. Compl. ¶¶ 27, 29. Additionally, she alleges that she filed another administrative claim on May 13, 2016, only six days before her termination. *Id.* ¶ 28. Termination certainly is an adverse employment action. *See Warch*, 435 F.3d at 513; *Boone,* 178 F.3d at 255; *Niner*, 2018 WL 3869748, at *16.

With regard to the third element, causation, a lapse of only six days clearly is sufficient to infer causation. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 247, 253 & n.16 (4th Cir. 2015) (noting that it would be "plainly contrary to law" to "only look to Foster's initial complaint of harassment and not her subsequent complaints of retaliation" and concluding that

"Foster's evidence of temporal proximity also tends to show causation: according to her uncontradicted testimony, she complained . . . about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated" (emphasis removed)); *Jones v. Coll. of S. Md.*, No. PWG-14-3869, 2016 WL 8669915, at *5 (D. Md. Sept. 23, 2016) ("[T]here is sufficient temporal proximity between Jones's later request for FMLA leave on January 15, 2014 and her termination of February 27, 2014 to establish a causal connection."); *Rhodes v. Comcast Cable Commc'ns Mgmt., LLC*, No. GLR-14-1824, 2016 WL 4376653, at *7 (D. Md. Aug. 17, 2016) ("The temporal proximity between Rhodes's *last* undisputed complaints of sexual harassment on July 6, 2012 and her termination on August 1, 2012, gives rise to an inference of causation." (emphasis added)).  It may be that, as the Board argues, they did not have notice of the MCCR complaint when they decided to terminate Wilson's employment.  Board Mem. 19.  The Board relies on *Taylor v. Anne Arundel County*, No. WDQ-12-2468, 2015 WL 134197, at *13 (D. Md. Jan. 8, 2015), in which the Court granted the defendant's summary judgment motion.  But here, discovery has not begun, and discovery is necessary to resolve whether the Board had notice when it decided to terminate Wilson's employment.  For now, assuming as true the facts as Wilson has pleaded them, she filed an administrative claim and, in response, the Board fired her.  That's enough.

The Board also argues that "there are no allegations to support that Plaintiff was performing at expected levels at the time of her termination or that her termination was discriminatory in nature."  Board Mem. 19.  As discussed above, Wilson failed to state a claim for wrongful termination because she failed to plead that her work performance was sufficient to meet her employer's expectations.  And, evidence of deficient work performance could negate a causal inference based on temporal proximity.  But, at this stage, pleading performance at

expected levels is not an element of a retaliation claim, *see Coleman*, 626 F.3d at 190, and failure to plead those facts does not prevent Wilson from stating a claim for retaliation.

Further, the employer clearly had notice of Wilson's January 2016 accommodation request. While the four months that elapsed between that request and her May 2016 termination may be "too long a period for Plaintiff to establish a causal relationship on temporal proximity alone." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 485–86 (D. Md. 2015); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citation omitted); *Horne v. Reznick Fedder & Silverman,* 154 F. App'x 361, 364 (4th Cir. 2005) ("[A] lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *Westmoreland v. Prince George's Cty., Md.*, 876 F. Supp. 2d 594, 607–08 (D. Md. 2012) ("Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality."). Nonetheless, a court "'may look to the intervening period for other evidence of retaliatory animus' which 'may be used to establish causation.'" *Westmoreland,* 876 F. Supp. 2d at 607–08 (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Wilson alleged that her employer placed her on administrative leave the month after her accommodation request, and then terminated her employment while she still was on administrative leave. Third Am. Compl. ¶¶ 25–29. Thus, she alleged causation on facts beyond the mere timeline of her accommodation request and her ultimate termination of

employment. *See Lettieri*, 478 F.3d at 650; *Westmoreland*, 876 F. Supp. 2d at 607–08. Therefore, she stated a claim for retaliation in violation of the ADA. *See Coleman*, 626 F.3d at 190; *Hamilton*, 2018 WL 1365847, at *6.

*Retaliation in Violation of Montgomery County Code (Count II)*

The Board argues that the Court should dismiss Wilson's state law claims, including Count II for retaliation in violation of Montgomery County Code, because she failed to comply with the notice requirement of the LGTCA. Board Mem. 19. Under the LGTCA, local governmental entities can be held liable for state constitutional torts and common law torts. *See Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999); *DiPino v. Davis*, 729 A.2d 354, 370–71 (Md. 1999). However, to sue a local government or its employees for unliquidated damages, a plaintiff must provide written notice of the claim arising from an injury that occurred on October 1, 2015 or later within one year after the injury giving rise to the suit. Cts. & Jud. Proc. § 5-304(b)(1). Further, the notice must be provided to the county attorney, *id.* § 5-304(c)(3)(iii).

Failure to give actual notice is not fatal to a claim if a plaintiff substantially complies with the notice requirements. *Huggins v. Prince George's Cnty., Md.*, 683 F.3d 525, 538 (4th Cir. 2012). Substantial compliance is a narrow exception to the LGTCA notice requirement; "substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim." *Id.* (quoting *Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. Ct. Spec. App. 2010) (alteration, citation, and internal quotation marks omitted)). Notably, "substantial compliance has no application to an outright failure to comply." *Moore v. Norouzi*, 807 A.2d 632, 643 (Md. 2002) (citing *Blundon v. Taylor*, 770 A.2d 658, 670 (Md. 2001)). Therefore, "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory

provision." *Id.* In addition to showing "substantial compliance as to the content of the notice within the [one year] period," a plaintiff must show substantial compliance "as to the statutory recipient." *Huggins*, 683 F.3d at 538.

Plaintiff claims that she "provided notice to [the] Montgomery County Executive on July 21, 2017, by certified mail, and that satisfied the condition precedent required by the Local Governments Tort Claims Act." Third Am. Compl. ¶ 11. Given that the latest action about which Wilson complains—her termination—occurred on May 19, 2016, well over a year earlier, she did not provide *timely* notice under the LGTCA. *See* Cts. & Jud. Proc. § 5-304(b)(1). According to the Board, Wilson argues in her pending Motion for Good Cause that she substantially complied with the LGTCA notice requirements by filing a February 13, 2015 EEOC complaint and a May 13, 2016 MCCR complaint. Board Mem. 22. I do not see this argument in Wilson's motion. But, in any event, Wilson does not identify the subject matter of the 2015 administrative complaint, and it predated the bulk of her allegations, such that it could not have put the Board on notice (and thereby afford the opportunity of conducting a timely investigation) of the majority of her claims. Nor is it clear that the Montgomery County attorney had notice of these administrative complaints or that Wilson sought money damages against the local government in either complaint. Consequently, Wilson did not substantially comply with the LGTCA notice requirements by filing these complaints. *See Bibum v. Prince George's Cty.*, 85 F. Supp. 2d 557, 564 (D. Md. 2000) ("[W]hen the notice does not apprise the proper officials that the Plaintiff is pursuing a claim, there is not substantial compliance."); *Halloran v. Montgomery Cty. Dep't of Public Works*, 968 A.2d 1104, 1114 (Md. Ct. Spec. App. 2009) (letter to defendant did not substantially comply with LGTCA requirements where, inter alia, "the letter was not directed to the proper party under the LGTCA, namely the County"); *White v. Prince*

*George's Cty.*, 877 A.2d 1129 (Md. Ct. Spec. App. 2005) (concluding that notice to police department's internal affairs division was not sufficient for purposes of providing notice under the LGTCA).

Nonetheless, the LGTCA provides "an exception to the notice requirement" in Cts. & Jud. Proc. § 5-304(d). Subsection (d) states that, "notwithstanding the other provisions of [§ 5-304], unless the defendant can affirmatively show that its defense has been prejudiced by lack of the required notice, upon motion *and for good cause shown* the court may entertain the suit even though the required notice was not given." Cts. & Jud. Proc. § 5-304(d) (emphasis added).

> The test for good cause shown "is that of ordinary prudence . . . whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 565 (D. Md. 2000). While ignorance of the notice requirement is not good cause, excusable neglect or mistake is. *Heron v. Strader,* 361 Md. 258, 761 A.2d 56, 64 (Md. 2000).

*Hayat v. Fairely*, No. WMN-08-3029, 2009 WL 2426011, at *6 (D. Md. Aug. 5, 2009). Wilson argues that she diligently pursued her claims administratively before she was able to retain counsel. Pl.'s Mot. 3–5. Yet, she was represented by counsel when she filed this civil action on February 28, 2017, giving her plenty of time to comply with the LGTCA's notice of her retaliation claim based on her May 19, 2016 termination. Moreover, the College and the Foundation identified her failure to provide the required LCTCA notice in their *original* May 25, 2017 motion to dismiss, and still Wilson did not provide notice to the Montgomery County Executive until July 21, 2017, almost two months later. This is far from the "ordinary prudence" and diligence required to show good cause. Under these circumstances, Wilson cannot show good cause. *See Hayat*, 2009 WL 2426011, at *6. Accordingly, her County Code retaliation claim is dismissed. *See* Cts. & Jud. Proc. § 5-304(b)(1), (c)(3)(iii), (d). And, dismissal is with prejudice given that amendment would be futile. *See Foman*, 371 U.S. at 182.

**<u>ORDER</u>**

For the reasons stated in this Memorandum Opinion and Order, it is, this <u>10th</u> day of <u>September</u>, <u>2018</u>, hereby ORDERED that

1. Plaintiff's Motion for Good Cause, ECF No. 54, IS DENIED;

2. The Board's Motion to Dismiss, ECF No. 55, IS GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

   a. The claims against the College and the Foundation ARE DISMISSED WITH PREJUDICE;

   b. The discrimination claims, Counts I, III, IV, and VI, ARE DISMISSED WITH PREJUDICE;

   c. The County Code retaliation claim, Count II, IS DISMISSED WITH PREJUDICE;

   d. The Motion to Dismiss IS DENIED as to the ADA retaliation claim against the Board, Count V; and

3. The Board's Answer is due September 29, 2018.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb