**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **JOY WILSON,** | * | |
| *Plaintiff,* | * | |
| | * | **Case No.: 17-cv-2784-PWG** |
| **v.** | * | |
| **MONTGOMERY COUNTY COLLEGE** | * | |
| **BOARD OF TRUSTEES,** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pending is Defendant Montgomery College Board of Trustees' (the "Board") Motion for Summary Judgment, ECF No. 83, which seeks judgment in its favor as to Plaintiff Joy Wilson's lone remaining claim: retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a). This case has a significant procedural history, including several amended complaints and motions to dismiss. On September 10, 2018, I granted in part the Board's most recent motion to dismiss and allowed only Ms. Wilson's ADA retaliation claim to proceed, after which the parties completed discovery. Now, having reviewed the Board's motion for summary judgment, Ms. Wilson's opposition, and the Board's reply, I find a hearing is unnecessary[1] and I will grant the motion.

---

[1]      Loc. R. 105.6 (D. Md. 2018). The motion is fully briefed. *See* ECF Nos. 83, 87, 89.

**Factual Background**[2]

Ms. Wilson began working for Montgomery College in 1998; the College terminated her employment on May 19, 2016.  Third Am. Compl. ¶¶ 3, 13, 29, 35, ECF No. 51-1 ("Compl."). She claims disabilities including "emotional and other impairments including, but not limited to, severe emotional stress reactions" and diagnoses of "Persistent Depressive Disorder, Left Amblyopia, and Dry Eyes Syndrome."  *Id*. ¶ 14.  These conditions, she alleges, impair and "substantially affect the life activity of seeing, communicating, interacting, and working." *Id*.

In January 2016, Ms. Wilson alleges she submitted an accommodations request, having previously done so without success in May 2014, and again was denied.  *Id*. ¶¶ 25, 80, 88.  On February 17, 2016, Ms. Wilson alleges that she was placed on administrative leave.  *Id.* ¶ 27.  This, she states, was "either a constructive discharge or adverse employment action or both."  *Id*.  On May 13, 2016, Ms. Wilson filed a complaint with the Maryland Commission on Civil Rights ("MCCR") in which she made several allegations against the College, including their failure to provide reasonable accommodations she requested as a result of her disabilities.  *Id.* ¶ 28.  The operative complaint in this case also alleges the MCCR complaint accused the college of discharging her unlawfully.[3]  *Id*.  On May 19, 2016, while still on administrative leave, the Board terminated her employment.  *Id*. ¶ 29.

**Procedural Background**

---

[2]      I previously wrote a lengthy recitation of the facts in my 2018 memorandum opinion.  In the interest of clarity, I have included here only the facts pertinent to Ms. Wilson's ADA retaliation claim.

[3]      It is unclear to me how, on May 13, 2016, the date Ms. Wilson filed the charge, she could have alleged "unlawful discharge," as ¶ 28 of the complaint states, considering her employment was terminated on May 19, 2016, six days after filing the MCCR charge.  The Charge suggests the Board "initiated disciplinary actions to terminate [Ms. Wilson's] employment" but does not allege actual termination.

It is critically important to note the parameters of this case following my September 10, 2018 memorandum opinion granting in part Defendant's Motion to Dismiss.  I dismissed with prejudice Ms. Wilson's claims for discrimination under the ADA 42 U.S.C. §§ 12101 – 12213; the Equal Protection Clause of the U.S. Constitution (pursuant to 42 U.S.C. § 1983); and the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; as well as her claims for discrimination and retaliation under the Montgomery County Code §§ 27-6 and 27-19.  The only claim I held could proceed was Ms. Wilson's ADA retaliation claim against only the Board.[4]  September 28, 2018 Memorandum Opinion, ECF No. 60 at 2 ("Mem. Op."). I also limited the course of conduct that qualified as retaliation, holding only that Ms. Wilson's filing a January 2016 accommodations request, followed by her placement on administrative leave in February, and her May 2016 MCCR complaint followed by the Board firing her, made out a cause of action for retaliation.  Mem. Op. 18–19.[5]

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*,

---

[4]     Ms. Wilson, over the span of her amended complaints, also sued Montgomery Community College and the Montgomery College Foundation but then removed those parties in her third amended complaint.  Mem. Op. 3 (citing Compl. ¶ 3).

[5]     As my opinion stated: "[f]or now, assuming as true the facts as Wilson has pleaded them, she filed an administrative claim and, in response, the Board fired her. That's enough [to state a claim for retaliation]," Mem. Op. 18, and "Wilson alleged that her employer placed her on administrative leave the month after her accommodation request, and then terminated her employment while she was still on leave. . . . Therefore, she states a claim for retaliation in violation of the ADA," Mem. Op. 19–20.

714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* When ruling on a motion for summary judgment, the court may not make credibility determinations regarding conflicting testimony or declarations and must draw all reasonable inferences in favor of the nonmovant. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

## Discussion

### 1) Exhaustion

The Board first argues that Ms. Wilson failed to exhaust her administrative remedies. Def.'s Mot. Mem. 5, ECF No. 83-2. "[T]he ADA incorporates [the] enforcement procedures [from Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*], including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Ctny., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citations omitted); *see also Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.") (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). Additionally, the charge must be timely,

although "the timeliness of an EEOC charge is not a jurisdictional matter." *Underdue v. Wells Fargo Bank, N.A.*, 684 F. App'x 346, 347 (4th Cir. 2017) (citing *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014)).  Rather, failure to file a timely EEOC charge is a basis for dismissal under Rule 12(b)(6) for failure to state a claim.  *See id.*  In Maryland, discrimination claims must be filed with the EEOC no later than 300 days after the alleged discriminatory conduct.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *Abdi v. Giant Food, LLC*, No. PWG-14-2988, 2016 WL 808775, at *4 (D. Md. Mar. 2, 2016).

Preliminarily, the administrative charge at issue here is one filed with the MCCR.  While Ms. Wilson forwarded her complaint to the EEOC and received a Right to Sue letter, Compl. ¶ 8, Judge Hollander has noted that MCCR and EEOC complaints carry equal weight when it comes to satisfying the exhaustion requirement.  *Rodgers v. COMSO, Inc.,* C.A. No. ELH-19-3268, 2020 WL 1663134, at *13 (D. Md. Apr. 3, 2020).

The Board states Ms. Wilson failed to exhaust her administrative remedies in her January 2016 accommodation request.  Def.'s Mot. Mem. 5.  The Board cites *Lewis v. MV Transp., Inc.*, No. 8:12-CV-00983-AW, 2012 WL 4518541, at *3 (D. Md. Sept. 28, 2012)[6] to support the proposition that exhaustion is required prior to bringing suit for a violation of the ADA.  Def.'s Mot. Mem. 5.

The basis of the Board's claim is that, in its view, Ms. Wilson failed to include in her January 2016 MCCR charge an allegation "that she made a reasonable accommodation request in January 2016" or allege that the Board retaliated against her for any January 2016 accommodation

---

[6]     *Lewis* notes that ADA and Title VII exhaustions requirements are identical.  *Id.* (citations omitted).

request.  Def.'s Mot. Mem. 6.  The result of such a failure, the Board argues, is that Ms. Wilson

failed to exhaust her administrative remedies and her claim therefore fails.

Ms. Wilson strenuously objects, pointing to "page 2 of the MCCR complaint," which

includes language such as "[i]n retaliation for my opposition of their discriminatory activity, on or

about January 19, 2016, the Respondent again denied my reasonable accommodation request."

Pl.'s Opp. 11, ECF No. 87; Ex. 18 to Pl.'s Opp., ECF No. 87-3 at 53.[7]  The MCCR complaint

continued: "[o]n or about February 17, 2016, in an attempt to further discriminate and retaliate

against me, the Respondent initiated disciplinary actions to terminate my employment."  Ex. 18 to

Pl.'s Opp., ECF No. 87-3 at 53.  Then, in its reply brief, Defendant appears to withdraw its

exhaustion argument, stating the defense "is moot in light of the undisputed fact that no

accommodation was requested in January 2016 and, in any event, Dr. Williams [the College's

Director of Employee Relations, Diversity and Inclusion, who ultimately terminated Ms. Wilson's

employment, Pl.'s Mot. 2] was unaware of any accommodation request in January 2016,"

apparently surrendering the exhaustion argument in favor of its argument on the merits of the

summary judgment motion.  Def.'s Reply at 2, n. 1.

I have reviewed the MCCR complaint.  Ms. Wilson filed the complaint on May 13, 2016

and raised several grievances, most of which are not relevant here due to my earlier opinion setting

limitations on her retaliation claim.  But among those grievances is an allegation that her employer

denied her reasonable accommodation request "in retaliation for [her] opposition of their

---

[7]      Counsel for Ms. Wilson attached to her opposition motion a 253-page trove of documents
marked in the Court's electronic filing system as "Exhibit."  It is filed at ECF No. 87-3.  Counsel
marked the various documents as exhibits (i.e. EX 18) and also used a Bates Stamp numbering
system, which is apparently imposed on the exhibits by the College (i.e. MontCollege_000433).
In an effort to accurately cite to the record, where I have cited to the documents attached to the
Plaintiff's opposition, I have used the Court's ECF pagination number rather than the Bates Stamp
number.

discriminatory activity, on or about January 19, 2016." Ex. 18 to Pl.'s Opp., ECF No. 87-3 at 53. On the first page, she checked the "retaliation" box. Considering the formal charge defines the scope of any claims that may later be raised in a civil suit, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (internal quotation marks omitted), (abrogated on other grounds by *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, (2019)), Ms. Wilson's MCCR complaint sufficiently put the Board on notice that she was alleging retaliatory conduct. This is so, particularly in light of the rule that administrative charges are to be construed liberally, though the court may not read into a charge an allegation it does not contain. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Accordingly, the Board's motion for summary judgment on the exhaustion issue, to the extent that it has not been withdrawn, is denied.

### 2) Retaliation

The matter of retaliation is far more nuanced. The elements of ADA retaliation are "(1) [an employee's] engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Hamilton v. Prince George's Ctny. Police Dep't*, No. DKC 17-2300, 2018 WL 1365847, at *6 (D. Md. Mar. 16, 2018) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). Regarding the first element, "protected activity is conduct 'oppos[ing] any practice made an unlawful employment practice[.]" *Id.* (quoting 42 U.S.C. § 2000e-3(a)). This "expansive" definition "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). A request for an accommodation is a protected activity under the ADA, as is filing an

administrative complaint.  *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001); *Hamilton*, 2018 WL 1365847, at *6.

What qualifies as adverse employment action under the second element turns on the perspective of a reasonable employee.  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Madock v. McHugh*, No. ELH-10-2706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011) (quoting *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 69 (2006) (citations and quotation marks omitted)); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) ("[R]etaliatory actions do have to be 'materially adverse'—such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." (quoting *Burlington N.*, 548 U.S. at 68, 126)).

And as to causation, courts assess the lapse in time between protected activity and adverse action.  As the Fourth Circuit has stated, a lapse of only six days clearly is sufficient to infer causation.  *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 247, 253 & n.16 (4th Cir. 2015) (noting that it would be "plainly contrary to law" to "only look to Foster's initial complaint of harassment and not her subsequent complaints of retaliation" and concluding that "Foster's evidence of temporal proximity also tends to show causation: according to her uncontradicted testimony, she complained . . . about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated" (emphasis removed)).  In an ADA retaliation action, which is assessed through the same lens as a Title VII retaliation claim, *Sydnor*, 681 F.3d at 593, "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden."  *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018).  To clear the bar, the

8

employee need only show "that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 335–36; *see Anderson v. Sch. Bd. of Gloucester Ctny.*, *Va.*, No. 3:18cv745, 2020 WL 2832475, at *18 (E.D. Va. May 29, 2020) (applying *Strothers* to ADA retaliation claim) (citing *A Society Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011)).

Once a *prima facie* case is established, the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Strothers*, 895 F.3d at 328. The defendant's burden at this point is "one of production, not persuasion." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff then must prove by a preponderance of the evidence that the legitimate reasons offered by the employer are but a pretext for discrimination, thus creating an inference that the employer did act with discriminatory intent. *Strothers*, 895 F.3d at 328. If the plaintiff cannot produce evidence demonstrating the falsity of the employer's proffered reasons, then defendants are entitled to summary judgment as a matter of law. *Anderson*, 2020 WL 2832475, at *18; *see also Reeves*, 530 U.S. at 148 (Explaining in the discrimination context, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

The Board argues that the record lacks evidence to support a finding that Ms. Wilson was placed on administrative leave or that her employment was terminated due to either her January 2016 accommodations request or her May 2016 MCCR complaint. First, the Board argues that

there is no evidence Ms. Wilson satisfied the first element by making the alleged reasonable accommodation request in January 2016.  The Board points to two areas in the record to support this conclusion: first, Lori Stegeman, the College's ADA Coordinator, provided an affidavit that Ms. Wilson did not submit a reasonable accommodation request in January 2016.  Stegeman Aff. ¶ 9, Ex. 2 to Def.'s Mot., ECF No. 83-4.  Additionally, the Board states Ms. Wilson, in her deposition, testified she did not recall making such a request in January 2016.  Def.'s Mot. Mem. 7; Wilson Dep., Ex. 3A to Def.'s Mot. at p. 90–91, ECF No. 83-5.

The Board also argues that there is no causal connection between Ms. Wilson's May 13, 2016 filing of an MCCR Charge and her termination from employment later that month.  Def.'s Mot. Mem. 8.  The reason for this, in the Board's view, is that "Dr. Williams authorized Plaintiff's termination on May 18, 2016, *before* Defendant received notice of the MCCR Complaint.  The MCCR did not issue the Notice of Charge of Discrimination until May 25, 2016."  *Id*. at 9.  Further bolstering its assertion that no one was on notice about the MCCR charge, the Board cites Plaintiff's testimony that she did not tell anyone about her pending MCCR complaint.  *Id*. at 4, 9; Wilson Dep., Ex. 3A to Def.'s Mot. at p. 121.

Finally, the Board argues that even if there is a causal connection, thereby establishing a prima facie case, Ms. Wilson cannot overcome the final prong of the retaliation analysis: disproving the Board's legitimate, non-retaliatory reasons for terminating her employment.  Def.'s Mot. 9.  The Board cites exhibit 4 to its motion, an affidavit from Dr. Williams, which the Board says shows that Dr. Williams terminated Ms. Wilson for "insubordination, inappropriate behavior, misconduct, malfeasance and/or nonfeasance of duty, below standard work performance, conduct harmful to the best interest of the College, its students and/or its employees and violation of the policy on Prevention of Workplace Violence."  *Id*.; Williams Dec. Ex. 4A to Def.'s Mot. at 6, ECF

No. 83-7.  This, the Board argues, vindicates its decision to terminate Ms. Wilson's employment for legitimate reasons entirely unrelated to her exercise of protected activity.

In opposition, Ms. Wilson argues that she did "mention[] disability discrimination and reasonable accommodation in the Charge"—which I interpret to mean her May 13, 2016 charge filed with the MCCR.  Pl.'s Opp. 12.  While the opposition brief is not the picture of clarity, it also points to a February 2, 2016 email as evidence of Ms. Wilson having made an accommodations request in January 2016.  *Id.*; Ex. 23 to Pl's Opp., ECF No. 83-7 at 58.

The opposition also argues that Dr. Williams was aware of Ms. Wilson's earlier filings aside from the 2016 MCCR complaint.  Pl.'s Opp. 13.  But in so doing, Ms. Wilson concedes that "Defendant is correct that the record does not reflect specific evidence that Williams was aware of the formal Charge of Discrimination filed with the MCCR at the time of filing."  *Id*.  Ms. Wilson appears to argue that Dr. Williams was instead aware of other protected activity in which Ms. Wilson engaged well before the January 2016 request.  *Id*.

Finally, Ms. Wilson argues that the Board lacked legitimate, non-pretextual reasons for taking adverse employment action against her.  Evidence of pretext, Ms. Wilson argues, is evident in the decline in her performance review score after she first requested (in 2014) accommodations; the "subjective" accusation against Ms. Wilson for workplace violence that "was almost exclusively only witnessed by the alleged hostile party"; and in other conduct, such as neck rolling, slamming a door, and nonverbal language, that the Board used to justify her termination.  Pl.'s Opp. 13–14.  Ms. Wilson also notes she was admonished for the offense of using a comma instead of a colon.  *Id*. at 14 (citing Ex. 34 to Pl's Opp., ECF No. 83-7 at 145).  These reasons, which Ms. Wilson casts as "suspicious" and implies are *de minimus* reasons for taking adverse employment

action, raise a genuine dispute of material fact (in her view) as to whether the Board's reasons for terminating her were merely pretextual.

The Board's Reply correctly stresses that my September 10, 2018 Memorandum Opinion limited the scope of Ms. Wilson's ADA retaliation claim. That claim, I found, could only be based on the protected conduct of Ms. Wilson's January 2016 accommodation request and her May 13, 2016 complaint, as well as the adverse action of the February 17, 2016 placement on administrative leave and her May 16, 2016 termination. *Supra*, note 5.

The Reply notes that it is undisputed that Dr. Williams was unaware of a February 2016 email exchange between Ms. Wilson and Ms. Stegman, an email exchange the Board further notes is absent from either the operative complaint or the MCCR charge. Def.'s Reply 2, n. 2. The Reply also argues that Ms. Wilson attempts to expand the issues before me: rather than relying on alleged protected activity in January and May of 2016, Ms. Wilson falls back on issues from 2014 and 2015, which are far afield from the claim I found could proceed. Def.'s Reply 3. As my Memorandum Opinion held, the basis of Ms. Wilson's lone surviving claim—ADA retaliation— was her January 2016 accommodations request, her February 2016 placement on Administrative Leave, the May 2016 MCCR complaint, and her May 2016 termination from employment. Def.'s Reply at 2; Mem. Op. 14–20.

After rebutting Ms. Wilson's attempt to expand the factual record beyond that which I previously ruled would be the scope of her surviving claim, the Reply argues Ms. Wilson has failed to undermine the legitimate bases for her placement on leave and eventual termination. Def.'s Reply. 6–7. Establishing pretext, the Board argues, requires evidence to support "an inference that the proffered legitimate reason for termination has no basis in fact." *Id*. at 7 (citing *Pritchard v. Metro. Wash. Airports Auth.*, No. 1:18-cv-1432 (AJT/TCB), 2019 WL 5698660, at *8 (E.D. Va.

November 4, 2019)).  Viewing the facts through this lens, the Board is emphatic that Ms. Wilson has failed to cite any evidence that at all undermines Dr. Williams' well-founded belief that she had a legitimate basis for terminating Ms. Wilson.  Def.'s Reply 8 (citing Ex. 4 and 4A to Def.'s Mot).

Turning to my charge in deciding this summary judgment motion, I must assess whether "the facts and all justifiable inferences arising therefrom in the light most favorable" to Ms. Wilson fail to demonstrate a genuine dispute of material fact.  *Foster*, 787 F.3d, at 248 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

I find there are legitimate issues of material fact on Ms. Wilson's establishment of a prima facie case of retaliation based on a combination of her January 2016 accommodations request, her placement on administrative leave in February 2016, and termination in May 2016. As to the first element, Ms. Wilson engaged in protected activity when she requested accommodations in January 2016.  A request for an accommodation is protected activity under the ADA.  *See Haulbrook*, 252 F.3d at 706.  While her MCCR complaint is not artfully stated, I must construe that document liberally, *Balas*, 711 F.3d at 408, and she has the benefit of all reasonable inferences being drawn in her favor as the non-movant.  *Foster*, 787 F.3d, at 248 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).  The Board does cartwheels trying to parse her MCCR complaint, but I am not convinced that its inartfulness is fatal.  While Ms. Stegeman's affidavit and Ms. Wilson's imprecise deposition testimony suggest she may not have engaged in protected activity preceding her placement on administrative leave, I find the language in the MCCR complaint, combined with the rule that all reasonable inferences are drawn in favor of the non-movant, is enough to conclude, for summary judgment purposes, that Ms. Wilson submitted an accommodations request in January 2016.  Prong one is met.

As to the second element, neither party disputes that the Board took adverse action against Ms. Wilson.  And, as my earlier opinion detailed, termination easily clears the bar of adverse employment action.  *Boone v. Goldin*, 178 F.3d, 253, 255 (4th Cir. 1999); *Niner v. Garrett Ctny. Pub. Works*, Civ. A. No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2016).  I also find that administrative leave, which here accompanied the possibility of eventual termination, is adverse employment action because it could have the effect of deterring a reasonable employee from engaging in protected conduct.  *Strothers*, 895 F.3d at 327; Ex. 1C to Def.'s Mot, ECF No. 83-3.  Prong two is met.

The causal element is also satisfied.  The Board relies largely on its argument from the first element—that Ms. Wilson never engaged in protected activity—to undercut any causal link.  But, having found Ms. Wilson engaged in protected activity in January 2016, and that the Board took adverse action against her in February; then again when it terminated her employment, the causal element is satisfied.  Ms. Wilson's placement on administrative leave occurred mere days after the protected activity,[8] well within the requisite time period to satisfy causation at this stage.  *Carter v. Ball*, 33 F. 3d 450, 460 (4th Cir. 1994) (finding five-month gap between protected activity and adverse action was sufficient to establish causal connection); *Clements v. Town of Sharpsburg*, No. 5:18-cv-573-FL, 2019 WL 1995327, at *4 (same).  Her ultimate termination also is close enough temporally, particularly considering the intervening administrative leave, to satisfy the causal link.

What I haven't yet discussed is Ms. Wilson's MCCR complaint.  Because she concedes Dr. Williams did not have notice and stated no one else could have known about her intent to file

---

[8]     As noted, Ms. Wilson was placed on administrative leave on February 17, 2016 after allegedly making an accommodations request in January 2016.  Compl. ¶¶ 27, 45.  And the Board terminated her employment on May 19, 2016.  ¶¶ 28, 29.

a complaint, there cannot be a causal connection between the filing of her MCCR complaint and her termination. To qualify, adverse action must occur soon after an employer learning of protected activity and here, the employer did not learn about the MCCR complaint before terminating Ms. Wilson's employment. *Strothers*, 895 F.3d at 335–36; *Anderson*, 2020 WL 2832475, at *18.

Now, it's the obligation of the Board to show legitimate, non-retaliatory reasons for the adverse action, which they have done. The Board's Exhibit 1B, a Recommendation to Terminate Ms. Wilson, dated January 8, 2016, lists insubordination, disorderly conduct on the job, harassment, and a workplace violence incident as reasons for terminating her employment. Ex. 1B to Pl.'s Mot., ECF No. 83-3.[9] The Report details Ms. Wilson's workplace issues. Some facts that stand out are Ms. Wilson failing to satisfy her supervisors' requests for annual goals (*id*. at 9), turning routine conversations about IRS reporting into contentious conversations (*id*. at 11), accusing a supervisor of lying and then slamming a door, apparently in response to a verbal reprimand (*id*.), levying regular accusations of bad faith against her supervisors (*id*. at 13), and providing incorrect materials to students (*id*. at 16). The Board having made a showing that it took adverse action against Ms. Wilson based on legitimate reasons, the burden now shifts to Ms.

---

[9]     The record is puzzlingly ambiguous about the date Ms. Wilson allegedly made her January 2016 accommodations request. Nowhere in the many versions of her complaint or in her opposition memorandum or exhibits does she state a specific date when she sought accommodations in January 2016, nor is any explanation given for her inability to recall when she made the request. This is all the more curious given her frequent efforts to refer back to events that occurred far earlier to support her claims. Similarly, the MCCR complaint offers only the date the request was denied, not the date it was made. Proof that the accommodations request occurred *after* the Recommendation to Terminate would be fatal to the causal element. And if Ms. Wilson had proof that the Recommendation to terminate her employment occurred shortly after an accommodations request, surely she would use this evidence to argue the decision to terminate her employment was pretextual. Thus, the Court is forced to speculate regarding whether her January accommodation request preceded the decision by her supervisors to recommend the termination of her employment.

Wilson to prove the Board's explanation is a mere pretext. *Anderson*, 2020 WL 2832475, at *18. That issue is the crux of what I must now decide.

I will assess the two possible actions that could constitute retaliation—administrative leave and termination—and whether the Board's proffered explanation for these actions was pretextual. The Board placed Ms. Wilson on administrative leave for insubordination, inappropriate behavior, disorderly conduct, workplace violence, deficient performance, and other reasons. Ex. 1C to Pl.'s Mot. (Letter from Dr. Williams imposing administrative leave), ECF No. 83-3. These also were the reasons for her eventual termination. Ex. 4A to Pl.'s Mot. Ms. Wilson does not meaningfully rebut these legitimate reasons for taking adverse employment action against her. Rather, her opposition memorandum points to earlier incidents, such as a significant decline in Ms. Wilson's performance evaluation from 2014 to 2015, to argue that the Board's reasons must be pretextual. The opposition also notes that Ms. Wilson started receiving poor marks shortly after her *first* accommodations request. But that occurred far earlier than the accommodations request and protected activity that I have found formed the basis of her ADA retaliation claim.

Ms. Wilson has failed to meet her burden at this final stage of the analysis. She argues that Dr. Williams was aware of earlier grievances and even invited Ms. Wilson to file an administrative complaint. Pl.'s Opp. 13 (citing *e.g.* Ex. 25 to Pl.'s Opp., ECF No. 83-7 at 115 (Ms. Wilson noting a Dec. 12, 2014 meeting with Dr. Williams); Ex. 67 to Pl.'s Opp., ECF No. 83-7 at 233 (staff grievance dated Dec. 13, 2014); Ex. 75 to Pl.'s Opp., ECF No. 83-7 at 115 (email from Dr. Williams acknowledging grievance); Ex. 10 to Pl.'s Opp., ECF No. 83-7 at 34 (same)). But there is no citation to the record demonstrating Dr. Williams, the decisionmaker, was aware of the January 2016 accommodation request and nothing beyond speculation that the Board's reasons for imposing administrative leave and later terminating Ms. Wilson's employment were pretextual.

16

Speculation is far from sufficient to establish pretext. *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 658 (D. Md. 2010) ("Since [employee] offers no evidence beyond his own unsubstantiated speculations that [employer's] proffered reason for termination was actually a pretext for retaliation, he fails to establish pretext by a preponderance of the evidence.")).

Further, the threshold is significant when it comes to showing pretext *after* an employer has shown legitimate reasons for taking adverse employment action.  The employee must show that *but-for* her engaging in protected conduct, the employer would not have taken the adverse action.  *Carr v. Md. Grocery Store Co.*, Civil Action No. GLR-17-244, 2019 WL 1427779, at *10 (D. Md. Mar. 29, 2019) (citing *Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017)) (holding that the plaintiff must prove "but-for" causation for her retaliation claim and that her complaint about disability discrimination must, therefore, be "the only motivating factor" in the decision to terminate her); *see also Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017) (plaintiff must establish disability was but-for cause of discrimination for ADA discrimination claim) (citing *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235 (4th Cir. 2016)); *Gentry*, 816 F.3d at 235–36 (ADA's text calls for "but-for" standard); *see generally DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (observing that "this [c]ourt does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination" (internal quotation marks omitted)).  Ms. Wilson cannot make this showing.  The Record is clear that the Board had ample non-retaliatory reason to terminate her employment, and therefore its motion for summary judgment must be granted.

**Conclusion[10]**

For the foregoing reasons, the Board's motion for summary judgment is GRANTED.  A

separate order follows.

DATED this 23rd day of March, 2021.

BY THE COURT:

_____/S/_____

Paul W. Grimm
United States District Judge

---

[10]       Plaintiff's opposition suggests that, if her opposition is unsuccessful in avoiding summary judgment, she would seek to amend the complaint for a fourth time.  Pl.'s Opp. 1.  But she has not filed a motion to amend, and if she were to do so it would be denied.  Ms. Wilson's time to amend as provided in the scheduling order has long passed.  At this procedural juncture, Fed. R. Civ. P. 15(a)(2) requires either the opposing party's written consent, which Ms. Wilson has not received (*see* Def.'s Reply 4 n.5), or leave of the Court.  Although leave to amend ordinarily must be freely given, it may be denied where the proposed amendment "would be prejudicial to the opposing party, or the moving party has acted in bad faith, or the amendment would be futile."  *See Equal Rights Ctr. v. Niles Bolton Assoc*., 602 F.3d 597, 603 (4th Cir. 2010).  A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation.  *Id*. at 604; *see also Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987).  Here, discovery is complete and summary judgment has now been granted for the Board.  Further, Ms. Wilson has had three opportunities to amend (ECF Nos. 24, 30, 51) and has neither shown good cause nor due diligence to warrant a motion to amend at this late juncture.  It is unquestionable that an amendment now would be belated and would prejudice the Defendant. Therefore, she will not be allowed to amend her complaint, and summary judgment is granted in the Defendant's favor.